# EXHIBIT A

 CT Corporation

**Service of Process Transmittal**
11/30/2018
CT Log Number 534490260

TO:     Barbara Jenkins
        Whole Foods Market, Inc.
        550 Bowie St
        Austin, TX 78703-4644

RE:     **Process Served in Massachusetts**

FOR:    Whole Foods Market Group, Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Nathalie J. Safar Individually and on Behalf of Her Two Daughters and Joshua Alpert, Pltfs. vs. Whole Foods Market Group, Inc. |
| **DOCUMENT(S) SERVED:** | Summons, Civil Action cover sheet, Complaint, Attachment(s) |
| **COURT/AGENCY:** | Trial Court of Massachusetts Superior Court, MA<br>Case # 1881CV03413 |
| **NATURE OF ACTION:** | Personal Injury - Failure to Maintain Premises in a Safe Condition - 03/06/2017 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Boston, MA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 11/30/2018 at 09:10 |
| **JURISDICTION SERVED :** | Massachusetts |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days (Document(s) may contain additional answer dates) |
| **ATTORNEY(S) / SENDER(S):** | Ann L Palmieri<br>Law Office of Ann L. Palmieri<br>Post Off Box 1586<br>Andover, MA 01810<br>(617)482-6111 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 11/30/2018, Expected Purge Date: 12/05/2018<br><br>Image SOP<br><br>Email Notification,  Email Process  SOP@WHOLEFOODS.COM<br><br>Email Notification,  Jay Warren  jay.warren@wholefoods.com<br><br>Email Notification,  Timothy Horn  timothy.Horn@wholefoods.com |
| **SIGNED:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>155 Federal St Ste 700<br>Boston, MA 02110-1727<br>617-757-6404 |

Page 1 of  1 / RS

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

## Commonwealth of Massachusetts

MIDDLESEX,SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 1881 CV 03413

*Nathalie J. Safar, Individually,
and on Behalf of her Two Daughters,
and Joshua Alpert*, PLAINTIFF(S),

v.

*Whole Foods Market
Group, Inc.*, DEFENDANT(S)

### SUMMONS

THIS SUMMONS IS DIRECTED TO *Whole Foods Market Group Inc.'s* (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the
Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been
filed in the *Middlesex Superior* Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide
   the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the
   opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect
   to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an
   extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a
   copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:
   a. Filing your **signed original** response with the Clerk's Office for Civil Business, *Middlesex Superior* Court, *200 Trade Cente*
      *Woburn MA* (address), by mail or in person, **AND**
      *01801*
   b. Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following
      address: *Ann L. Palmieri, Esq., P.O. Box 1586, Andover, MA 01810*

3. **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer
   must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint.
   Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to
   use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are
   based on the same facts or transaction described in the Complaint, then you must include those claims
   in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this
   lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your
   Answer or in a written demand for a jury trial that you must send to the other side and file with the
   court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a
   **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion
   to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If
   you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions"
   described in the rules of the Court in which the complaint was filed, available at
   www.mass.gov.courts/case-legal-res/rules of court.

A true copy Attest:

*Joseph P. Casey*

☐

Deputy Sheriff Suffolk County

11-30-18

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 1881CV03413 | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| CASE NAME: Nathalie J. Safar Individually and on Behalf of Her Two Daughters and Joshua Alpert vs. Whole Foods Market Group, Inc. | Michael A. Sullivan, Clerk of Court Middlesex County |
|---|---|
| TO: Ann L Palmieri, Esq. Law Office of Ann L. Palmieri Post Off Box 1586 Andover, MA 01810 | COURT NAME & ADDRESS Middlesex County Superior Court - Woburn 200 Trade Center Woburn, MA 01801 |

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

**STAGES OF LITIGATION**                                              **DEADLINE**

|  | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 02/26/2019 | |
| Response to the complaint filed (also see MRCP 12) | | 03/28/2019 | |
| All motions under MRCP 12, 19, and 20 | 03/28/2019 | 04/29/2019 | 05/28/2019 |
| All motions under MRCP 15 | 03/28/2019 | 04/29/2019 | 05/28/2019 |
| All discovery requests and depositions served and non-expert depositions completed | 09/24/2019 | | |
| All motions under MRCP 56 | 10/24/2019 | 11/25/2019 | |
| Final pre-trial conference held and/or firm trial date set | | | 03/23/2020 |
| Case shall be resolved and judgment shall issue by | | | 11/27/2020 |

**The final pre-trial deadline is not the scheduled date of the conference.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED 11/28/2018 | ASSISTANT CLERK Martha Fulham | PHONE (781)939-2760 |
|---|---|---|

| CIVIL ACTION COVER SHEET | TRIAL COURT OF MASSACHUSETTS SUPERIOR COURT DEPARTMENT | DOCKET NO. *1881 CV 03413* |
|---|---|---|
| | COUNTY OF *Middlesex* ⊙ | |

| PLAINTIFF(S) *Nathalie J. Safer et al.* *Individually and on behalf of her 2 Daughters and* | DEFENDANT(S) *Whole Foods Market Group, Inc.* *Joshua Alpert* |
|---|---|
| Type Plaintiff's Attorney name, Address, City/State/Zip Phone Number and BBO# | Type Defendant's Attorney Name, Address, City/State/Zip Phone Number (If Known) |

*Ann L. Palmieri*
*P.O. Box 1586*
*Andover, MA   01810*
*978-376-2114   BBO #388090*

**TYPE OF ACTION AND TRACK DESIGNATION** (See reverse side)

| CODE NO. | TYPE OF ACTION (specify)       TRACK | IS THIS A JURY CASE? |
|---|---|---|
| *B04* | *Other Negligence/* *Personal Injury*       *F* ⊙ | ☑ ] Yes   ◯ ] No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(Attach additional sheets as necessary)

FILED IN THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

NOV 2 8 2018

*[signature]* CLERK

A. Documented medical expenses to date:
   1. Total hospital expenses ..................................... $ _____
   2. Total doctor expenses ...................................... $ _____
   3. Total chiropractic expenses ............................ $ _____
   4. Total physical therapy expenses ..................... $ _____
   5. Total other expenses (describe) ...................... $ _____
      Subtotal $ *100,000+*
B. Documented lost wages and compensation to date ......... $ _____
C. Documented property damages to date .......................... $ _____
D. Reasonably anticipated future medical expenses ........... $ _____
E. Reasonably anticipated lost wages and compensation to date $ _____
F. Other documented items of damages (describe) *Plaintiff is unable to* *return to work and it is unlikely that she will* $ *2,000,000+*
G. Brief description of plaintiff's injury, including nature and extent of injury (describe) *Plaintiff was slammed into a glass wall as she entered Whole Foods Market in Newton when the automatic door malfunctioned. As a result, the Plaintiff has suffered a concussion migraines, severe headaches, tinnitus, nausea, vertigo and a multitude of other issues. To date, her condition has not improved enough to do anything near her normal daily routine. She is newly married and has two(2) minor daughters that have been impacted as well.*   Total $ *2,100,000+*

**CONTRACT CLAIMS**
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

| | |
|---|---|
| | TOTAL   $ ............... |

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."
Signature of Attorney of Record *Ann L. Palmieri*   Date: *11/28/18*
A.O.S.C. 3-2007

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS *Individually and on behalf*     SUPERIOR COURT
               *of her 2 Daughters and Joshua* C.A. NO. 2018-
                                     *Alpert*

NATHALIE J. SAFAR/ET ALS,       )
          Plaintiffs           )

v.                             )

                               )     COMPLAINT

WHOLE FOODS MARKET GROUP, INC.,     )    *1881 CV03413*
          Defendant          )

                               )

> FILED
> IN THE OFFICE OF THE
> CLERK OF COURTS
> FOR THE COUNTY OF MIDDLESEX
>
> NOV 2 8 2018
>
> CLERK

Plaintiff Nathalie J. Safar and her husband, Joshua Alpert and her two minor daughters (the "Plaintiff" and/or "NSA") hereby file their Complaint against Whole Foods Market Group, Inc. ("WFM"), as follows:

     1.      Plaintiff Nathalie J. Safar is an individual who resides at 189 Carlton Street, Waban, Massachusetts 02468. She has two minor daughters who reside with her and Nathalie seeks damages on their behalf as well.

     2.      Plaintiff Joshua Alpert is an individual who resides at 189 Carlton Street, Waban, Massachusetts 02468. Plaintiffs Nathalie J. Safar and Joshua Alpert are a married couple.

     3.      Defendant Whole Foods Market Group, Inc., ("WFM") is a Delaware corporation with a principal place of business at 550 Bowie Street, Austin, Texas doing business at 916 Walnut Street, Newton, Massachusetts.

## FACTS

     4.      On or about March 2, 2017, Plaintiff Nathalie Safar, after completing her work day, left her job in the Newton Public Schools to pick up some grocery items at the Whole Foods Market("WFM") located at 916 Walnut Street, Newton, MA.

5.     As Ms. Safar approached her neighborhood grocery store, all appeared as it usually did. As she entered the building the door was in the open position and she attempted to proceed into WFM.

6.     Ms. Safar approached the entry to the store with due care, as she entered the store, the door struck her suddenly and unexpectedly, on the right side/temple of her head. There were several witnesses to the incident, including customers and one of the store managers.

7.     As Ms. Safar observed, after being struck, an employee was instructed to unplug the door by the Store Manager. When the employee asked how to do it, the Store Manager, Chuck Gorman, went and unplugged the automatic door himself.

8.     Ms. Safar was assisted by employees to a place to sit when she immediately complained of feeling nauseous, dizzy, and said she felt upper body pain, in her head and neck. Ms. Safar was offered an ice pack as well as free groceries, five items which an employee retrieved from the store for her given she was unable to stand up at the time and walk around the store herself.

9.     After a little while, Ms. Safar got up, went to her car and called her internist, Dr. Bruce Tofias, from the Whole Foods parking lot. Dr. Tofias' office instructed Nathalie to come in to the office since it was a short distance away. At 3:15 p.m. Ms. Safar went to see Dr. Tofias who diagnosed Ms. Safar with a "Concussion, without loss of consciousness" and sent her to Newton/Wellesley Emergency Room for a CT scan for her head injury.

10.     At 4:00 p.m. Ms. Safar checked into the Emergency Room and at 6:00 p.m. a CT scan was administered. After a review of the scan, Ms. Safar was

-2-

told that she would feel nausea, dizziness and headaches for the next few weeks and was told to stay home from work for a week.

11. In addition to experiencing the above symptoms, she experienced light sensitivity, ringing in her ears and a woozie overall feeling. Further, she was told that if her symptoms did not improve she should contact a neurologist.

12. On Monday, March 6, 2017, Ms. Safar's husband, Joshua Alpert went to WFM and spoke with one of the managers. He was told by the manager that the manager had completed a report that was provided to "headquarters" on the day of the incident, Thursday, March 2, 2017, describing the incident, including the faulty automatic entrance door that hit Ms. Safar on the side of her head.

13. Mr. Alpert was told that he would receive a copy of the report, but he never did.

14. By the end of March, Nathalie still suffered from daily headaches, nausea and extreme exhaustion. The migraines necessitated an intense migraine medication that Nathalie had to take to reduce the pain.

15. Nathalie received Physical Therapy (PT) to try and improve her ability to cope with the limitations imposed by her injury.

16. She was told in April that she could try and return to work on a part-time basis, which she did try to do, but it only exacerbated her condition. Nathalie works with preschoolers with special needs and the job requires a great deal of bending, lifting and overall physical activity, which is difficult when dealing with a head injury and neck pain and movement limitations.

17.     Nathalie's neurologist, Dr. Margarita Ebril-Lel recommended that she only return to work part-time.  This part-time situation, however, did not work since Nathalie only got worse, not better over time.

18.     Nathalie's neurologist then recommended that she take a medical leave.  At that time, her neurologist increased her medications and recommended that she schedule appointments with an Occupational Therapist (OT) and a Speech and Language Pathologist (SLP) to assist her with word retrieval, memory, concentration and executive function.  The goal was not to increase her symptoms, but to provide strategies to cope with the pain and symptoms while re-coaching Nathalie.   In addition, she started to see a Therapeutic Massage therapist specializing in deep tissue myofascial and craniosacral therapy once a week.

19.     Nathalie and her husband had planned for many months to have a formal wedding ceremony in June, 2017 with their family and a few friends in attendance.  Nathalie's ability to function normally as she had before the accident has been severely impacted, often she cannot find the right words or express herself as well as she did before the accident.  She was mortified when she said the wrong vows and felt very uncomfortable at her own wedding, she found the situation overwhelming and just wanted to escape.

20.     Fortunately, they were able to have their ceremony, but they were unable to travel as planned for their long-anticipated honeymoon because Nathalie could not tolerate the travel.  Her condition prevented her from having the joyous, wonderful celebration she had envisioned since she was constantly plagued with headaches, vertigo and exhaustion in the days and weeks, both before and after, her wedding.

-4-

21.    Over the summer of 2017 she continued her regimen of PT, OT, and SLP and took her medications as prescribed.  Nathalie, along with her sister and their respective husbands and children had made plans to go on vacation together. Nathalie realized that due to her overall exhaustion, sensitivity to light, headaches and other symptoms, she could not relax and enjoy her surroundings. Nathalie and her family had to cut their vacation short and return home.

22.    Over the months since the summer of 2017 through to the present, Nathalie has continued to fight an overall feeling of exhaustion, headaches/migraines and general malaise since the accident.  Many days she wakes in the morning and gets ready for the day to find that by 10 or 11 in the morning she is in a darkened room with a migraine and overall pain lying on the sofa or in her bedroom in the fetal position.  Everything she does must be timed to avoid the brightest light of the day and avoid the busy, noisy crowds.

23.    As summer turned to fall, it was clear that Ms. Safar would not be able to return to the work that she loved as a pre-school Assistant Teacher for Special Needs children.  Ms. Safar continued to suffer from the symptoms of her injury and her medical leave was continued to December 22, 2017, which would take her through to the following January, 2018.  During this period, Dr. Margarita Ebril-Lel referred Nathalie to her colleague, Dr. Alexandra Stillman, a concussion specialist.  Ms. Safar became the patient of both neurologists.

24.    Dr. Stillman explained to Ms. Safar, after reviewing her medicals and conducting her own examinations, the following:

    1.    Ms. Safar needed more serotonin production and therefore, recommended increasing her dosage of Zoloft;
    2.    Ms. Safar's eye spasms are indicative of the eye and brain not working together and therefore, she recommended continuing the vestibular therapy;

3.    Ms. Safar suffers from cervicogenetic vertigo, caused by the whiplash injury, following the injury when she moves her neck. Also, Ms. Safar suffers from Tinnitus due to the injury, which is a constant ringing in her ears. It was recommended that she receive trigger point injections, including medication to block nerves as well as steroids, and continue massages with cranial-sacral massage therapy;

4.    Tinnitus may occur when there is a blow to the head and damage can be caused in the middle ear. Since Ms. Safar has never had it before, Dr. Stillman said it was related to the injury. Initially, after the injury, the tinnitus was sporadic, but sometime in September it became constant. Dr. Stillman had stated to Ms. Safar that 75% of tinnitus cases go away after a year and 25% do not. Tinnitus is not curable.

5.    Since Ms. Safar has a learning disability, Dr. Stillman stated that further neurological testing was needed that may suggest the need/use of ADHD drugs temporarily while recovering because people who have learning disabilities often take longer to recover from head injury/concussion.

25.    In early November of 2017, Ms. Safar completed her second round of trigger shots, which included steroids as well as a nerve blocker, she woke the next day with a headache and horrible soreness at the injection sites. The steroid injections made her symptoms worse and she could only wait until the medicine wore off, it took about four weeks before she saw any improvement. The steroid medication was never again used at these sites.

26.    In addition, Ms. Safar was referred to the Henry-Benson Institute for Mind and Body at Massachusetts General Hospital with the hope that the Institute will provide some relief from the tinnitus. One of their recommendations was that she go to a course for MBSR (mind, body, stress reduction) along with Acupuncture and Cranial-Sacral massage therapy.

27.    Ms. Safar continues to suffer from her injury at WFM. She continues to suffer from tinnitus, has headaches, sensitivity to light despite using a light blocking prescription, she continues to go to PT, OT, and SLP, receive

massages, goes for trigger shots, and is working with a Health Coach to try and recover from the symptoms caused by the trauma to her body after the injury.

28.     Ms. Safar was acting with due care at all times on the afternoon of March 2, 2017. Ms. Safar drove to the appropriate parking area and parked the car in a designated parking space. She exited her vehicle with the same degree of due care and caution.

29.     She proceeded to enter the WFM as she had on numerous occasions before. There were no warning cones or other warning signs to warn customers that the door was not properly functioning.

30.     WFM was negligent in its failure to insure that the entry to the store areas were safe to traverse. WFM's failure to post warning signs, orange cones, or to put wooden work-horses to block the door, or to do anything to insure the safe entry to the store proved catastrophic to Ms. Safar, since she was struck on the side of the head/face and thrust sideways, causing whiplash and a concussion.

31.     The injury that Ms. Safar sustained as a result of the swinging electric door, that was later unplugged, was a foreseeable injury by those that supervise, manage and operate the WFM.

32.     WFM had a duty to provide a safe entry for its customers to insure that they could safely enter the store and purchase their groceries.

33.     The malfunctioning door should have been known to those who worked at WFM and WFM's failure to use due care and properly inspect and secure the door and/or repair the door in a timely, safe manner, were all contributing events to make these factors the proximate cause of the accident.

34.    WFM's failure to properly inspect, maintain and repair and/or replace the automatic door and WFM's failure to use any safety cones to warn customers to take additional care are the sole causes of the accident and the injuries to Ms. Safar.

## COUNT I

35.    Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 34 above.

36.    As stated above, Ms. Safar was legally on the premises of WFM on March 2, 2017 at its 916 Walnut Street, Newton, MA ("the Premises") store.

37.    As Ms. Safar was attempting to enter the Premises to go shopping at WFM, she was slammed into the glass wall where she sustained severe personal injuries as a direct and proximate result of Defendant's negligent maintenance of the Premises which included, but was not limited to the following:

(a)    The Defendant failed to maintain the automatic doors at the Premises in a safe manner when it knew that such a failure put its customers at risk of being injured;

(b)    Defendant failed to post any signage or other warning that the automatic doors were not operating properly when WFM knew or in the exercise of reasonable care should have known that it existed;

(c)    Defendant negligently failed to inspect the Premises for dangerous conditions such as the malfunction of the automatic doors when it knew, or in the exercise of reasonable care, should have known that such malfunctioning could occur causing injury to WFM customers.

38.     As a direct and proximate result of Defendant's negligence, as stated above, Plaintiff Nathalie J. Safar was slammed against a glass wall resulting in medical bills, costs and fees in excess of $100,000.00 and sustained severe personal injuries which have and will continue to prevent Plaintiff from performing her normal and daily activities.

WHEREFORE, Plaintiff Nathalie J. Safar demands judgment against Defendant WFM for her damages, plus interest and costs.

## COUNT II

39.     Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 38 above.

40.     As a direct and proximate result of the negligence of Defendant WFM, as stated above, Plaintiff Nathalie J. Safar has undergone extensive medical treatment resulting in medical bills, costs and fees in excess of $100,000.00.

41.     As a direct and proximate result of Defendant WFM's negligence, Plaintiff Nathalie J. Safar has suffered and continues to suffer great physical pain and mental anguish, and has incurred expenses in an attempt to cure and/or treat the injuries.

WHEREFORE, Plaintiff demands judgment against Defendant WFM for all of her medical bills, fees, plus interest and costs.

## COUNT III

42.     Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 41 above.

43.     As a direct and proximate result of Defendant's negligence, Plaintiff Nathalie J. Safar has been and will continue to be unable to perform Plaintiff's normal and daily activities.

44.     As a direct and proximate result of Defendant WFM's negligence, Plaintiff Nathalie J. Safar has been and will continue to be unable to work.

45.     As a direct and proximate result of Defendant WFM's negligence, Plaintiff Nathalie J. Safar has lost, and will continue to lose wages, salaries and other economic benefits.

WHEREFORE, Plaintiff demands judgment against Defendant WFM for her lost wages and other employment benefits, pension, insurance benefits, plus interest and costs.

## COUNT IV

46.     Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 45 above.

47.     As a direct and proximate result of Defendant's negligence, Plaintiff Joshua Alpert has been and will continue to be unable to have the relationship he had with his wife.

48.     As a direct and proximate result of Defendant WFM's negligence, Plaintiff Joshua Alpert has suffered severe emotional distress and mental anguish, and has lost income and incurred expenses in an attempt to deal with the losses suffered by their family.

WHEREFORE, Plaintiff demands judgment against Defendant WFM for damages, plus interest and costs.

## COUNT V

49.    Plaintiff re-alleges and incorporates by reference the allegations
contained in Paragraphs 1 through 48 above.

50.    As a direct and proximate result of Defendant's negligence,
Plaintiff's two minor daughters have been and will continue to be unable to have
the relationship they had with their Mother, Plaintiff Nathalie J. Safar, before she
was slammed into the glass wall at the Defendant WFM's Walnut Street store.

51.    As a direct and proximate result of Defendant WFM's negligence,
Plaintiff's daughters have suffered severe emotional distress and mental anguish,
as a result of their Mother's injuries.

WHEREFORE, Plaintiff demands judgment against Defendant WFM for
damages for her two minor daughters, plus interest and costs and such other and
further relief as the Court deems just and proper.

NATHALIE J. SAFAR ET ALS,
By their Attorney,

Ann L. Palmieri (BBO # 388090)
Law Office of Ann L. Palmieri
Post Office Box 1586
Andover, MA  01810
Telephone:  (617) 482-6111
Cell: (978) 376-2114

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES TRIABLE OF RIGHT
BY A JURY IN THE INSTANT ACTION.

Dated:  November 28, 2018

- 11 -